[Cite as *State v. Rhymer*, 2021-Ohio-2908.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200164 |
| | | TRIAL NO. B-1803761 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| JAMES RHYMER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 25, 2021

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Angela Glaser* and *Angela Glaser*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant James Rhymer was convicted of voluntary manslaughter and felonious assault. He has appealed, arguing in four assignments of error that (1) the trial court failed to properly instruct the jury on the elements of self-defense, (2) the trial court erred when it instructed the jury on the lesser-degree offense of voluntary manslaughter, (3) he was denied the effective assistance of counsel, and (4) the verdict was against the manifest weight of the evidence. We overrule all assignments of error and affirm the judgment of the trial court.

## *Factual Background*

{¶2} Marilyn Kancy testified that she and Rhymer have a son ("J") together and share custody. On June 29, 2018, Rhymer and Kancy met at a subdivision to exchange custody of J. They parked their cars on the side of the road close to the subdivision's entrance. At the time Kancy was dating the victim, Thomas Landacre.

{¶3} Kancy testified that Rhymer had just buckled J into his car seat when Landacre, who had been working near the back of the subdivision, drove up and started yelling at Rhymer. Kancy ran to get in between the two men. She testified that Rhymer retrieved a handgun from his car. Landacre "got away" from Kancy and approached Rhymer. She heard a gunshot and turned to see Landacre collapse to the ground with blood coming out of his neck. Rhymer got in his car and drove away. Kancy testified that Landacre did not have a weapon in his possession and the two men never touched each other during the confrontation.

{¶4} Detective Kevin Illing interviewed Rhymer shortly after the shooting. A video recording of the interview was played at trial. Rhymer told Illing that

Landacre was not armed, and, although Landacre lunged at him, he never touched him.

{¶5} The state also played surveillance video that was recovered from a nearby pool clubhouse. The video confirms that Rhymer put J in the back seat of his car and was standing right outside the driver's side door when Landacre pulled up. The confrontation ensued, and approximately 45 seconds later Landacre fell to the ground.

{¶6} Rhymer testified that there was tension between him and Landacre and identified several quarrels that occurred prior to the shooting. He testified that Landacre had previously threatened to "stomp" his head into the ground in front of J. On another occasion, when he asked Kancy if she needed a place to stay, Landacre texted him a picture of his penis and threatened him. He testified that he called Landacre a child molester, which he knew was false, in order to get him to stay away from J. A month prior to the shooting, Landacre "busted" the windows out of Kancy's car. Rhymer also testified that Landacre had tried to kill J, but he did not explain how or why, and during his interview with Detective Illing, he said nothing about Landacre attempting to kill his son.

{¶7} Rhymer testified that on the day in question, Landacre pulled up approximately ten feet away from his car, slammed on his brakes, flung his door open, and jumped out. Landacre yelled, "There you are, you are hiding from me, I found you, little pussy bitch." Rhymer testified that Landacre was "hissing and laughing" and yelling at the top of his lungs, "come on pussy bitch, let's do this right now, let's do this motherfucker." He described Landacre as looking like "he was on

drugs or something, very angry, psychotic."[1] Rhymer testified that he noticed Landacre's swastika tattoo, which he described as "disturbing."

{¶8} Rhymer testified that he feared for his life and his son's life. Although he testified at one point that he did not feel as though he could safely retreat because he was afraid to turn his back on Landacre, he also admitted that he could have gotten in his car and driven away. Instead, he grabbed his handgun from his car console and turned to confront Landacre. He testified that he told Landacre to stop and asked him not to hit him or break his car windows with his son in the car. He testified, "I was pushed. Whether I was punched or not, I don't know." He did not see a weapon in Landacre's possession, but he claimed that Landacre's tattooed hands looked like weapons.

{¶9} He testified that Kancy got in between them, but Landacre got around her and walked up to him, pushed him, and tried to grab the firearm out of his hand. Rhymer then shot Landacre from "point blank range." Rhymer got in his car and drove around the corner to the pool clubhouse, where he called 911 and waited for police to arrive.

{¶10} Rhymer admitted that his recounting of the events at trial did not line up with his statements to detectives. He acknowledged that he told detectives that Landacre never touched him, and he never told them that Landacre had lunged at him, that he thought Landacre's hands were weapons, or that Landacre tried to grab the firearm out of his hand. He claimed that he was in shock at the time of the interview and did not remember all of the details of the incident until two or three days later.

---

[1] Landacre did have multiple drugs in his system—cannabinoids, cocaine metabolites, and fentanyl.

{¶11} Rhymer was acquitted of murder, but convicted of voluntary manslaughter and felonious assault.

### *First Assignment of Error*

{¶12} In his first assignment of error, Rhymer argues that the trial court failed to properly instruct the jury on the elements of self-defense.

{¶13} The trial court instructed the jury:

Self-defense. Self-defense means that the defendant was not at fault in creating the situation giving rise to the shooting that occurred on June 29, 2018, and that the defendant had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm. And the defendant did not violate any duty to retreat to avoid danger. *And the defendant used reasonable force.*

To prove beyond a reasonable doubt that self-defense does not apply, the State need only disprove one of the four elements that I just mentioned.

Excessive force. A person is allowed to use force that is reasonably necessary under the circumstances to protect himself from apparent danger. Excessive force occurs if a defendant used more force than reasonably necessary, and the force used was greatly disproportionate to the apparent danger.

(Emphasis added.)

{¶14} Rhymer's issue lies with the portion of the court's instruction that states, "And the defendant used reasonable force." He argues that it is duplicative of the excessive-force instruction and added a fourth element to his self-defense claim

where, by law, there are only three elements. Rhymer contends that this provided the jury with an improper basis upon which to reject his self-defense claim.

{¶15} Rhymer did not object to the jury instruction at trial, so we review for plain error. *State v. Love*, 2017-Ohio-8960, 101 N.E.3d 623, ¶ 20 (1st Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*

{¶16} The Ohio Jury Instructions ("OJI") state:

1. GENERAL. The defendant is allowed to use deadly force in self-defense. Evidence was presented that tends to support a finding that the defendant used deadly force in self-defense. In order to prove that the defendant did not act in self-defense, the state must prove beyond a reasonable doubt at least one of the following:

(A) the defendant was at fault in creating the situation giving rise to (describe the event in which the use of deadly force occurred); or

(B) the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of death or great bodily harm; or

(C) the defendant violated a duty to (retreat) (escape) to avoid the danger; or

(D) the defendant did not use reasonable force.

*Ohio Jury Instructions,* CR Section 421.21 (Eff. Mar. 28, 2019) (Rev. Nov. 16, 2019).

8. EXCESSIVE FORCE (ADDITIONAL). A person is allowed to use force that is reasonably necessary under the circumstances to protect himself from an apparent danger. For you to find the defendant guilty, the state

6

must prove beyond a reasonable doubt that the defendant used more force than reasonably necessary and that the force used was greatly disproportionate to the apparent danger.

*Id.*

{¶17} OJI are nonbinding guidance that have no force or effect as a rule of law. *State v. Mincey*, 2018-Ohio-662, 107 N.E.3d 735, ¶ 30 (1st Dist.). However, we find that the OJI instructions relied on by the trial court in this case are in conformity with Ohio law.

{¶18} At the time of Rhymer's trial, the elements of self-defense involving the use of deadly force were:

(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger.

(Citations omitted.) *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 48. "The elements of self-defense are cumulative, so a defendant's self-defense claim fails if any one of the elements is not present." *Id.*

{¶19} "Often missing from quotations of the self-defense formulation is the requirement that the force used be reasonable." *State v. Gray*, 2d Dist. Montgomery No. 26473, 2016-Ohio-5869, ¶ 8. It is well-established that the defendant may only use "that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990); *see State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110431, 2013-Ohio-1194, ¶ 21 (where this court, while discussing the

second element of self-defense, stated that "the excessive use of force will render the claim of self-defense invalid").

{¶20} Rhymer acknowledges that the force used must be reasonable, but argues that the trial court erred by instructing the jury that reasonable force was a fourth element of self-defense, as opposed to part of the second element. Rhymer makes a distinction without a difference. If a jury finds that a defendant used unreasonable force, then it cannot find the second element in favor of the defendant. Therefore, the outcome is the same as if the jury considered reasonable force as a fourth element.

{¶21} The trial court's instructions complied with Ohio law regarding the elements of self-defense and the requirement that the use of deadly force in self-defense be reasonable. The reasonable-force element was not duplicative of the excessive-force instruction and the excessive-force instruction merely defined "reasonable force." The first assignment of error is overruled.

### Second Assignment of Error

{¶22} In his second assignment of error, Rhymer contends that the trial court erred when it instructed the jury on the lesser-degree offense of voluntary manslaughter because there was insufficient evidence that he acted in a sudden passion or fit of rage.

{¶23} R.C. 2903.03(A) delineates the elements of voluntary manslaughter. "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." R.C. 2903.03(A).

{¶24} Although sometimes referred to as a lesser-included offense of murder, voluntary manslaughter is a lesser-degree offense of murder because the elements of voluntary manslaughter are contained in the offense of murder, except for the mitigating elements. *State v. Webster*, 1st Dist. Hamilton No. C-130700, 2014-Ohio-5647, ¶ 15. Acting under a sudden passion or fit of rage is not an element of voluntary manslaughter that the state must prove; it is a mitigating circumstance that a defendant must prove by a preponderance of the evidence if he is also on trial for murder or aggravated murder. *State v. Rhodes*, 63 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992).[2]

{¶25} "[A] jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992). In determining whether to give a voluntary-manslaughter instruction, the trial court must view the evidence in the light most favorable to the defendant. *State v. Levett*, 1st Dist. Hamilton No. C-040537, 2006-Ohio-2222, ¶ 25.

{¶26} The Ohio Supreme Court has explained:

An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. In determining whether the provocation is reasonably sufficient to bring on

---

[2] "If a defendant is not charged with murder or aggravated murder, but rather is on trial for voluntary manslaughter, neither party is required to establish either of the mitigating circumstances. Rather, the court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder. In that situation, the prosecution needs to prove, beyond a reasonable doubt, only that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to demonstrate the existence of a mitigating circumstance." *Rhodes* at 618.

sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the "* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *" must be considered. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.

*Shane*, 63 Ohio St.3d at 634, 590 N.E.2d 272, quoting *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph five of the syllabus.

{¶27} Rhymer contends that the evidence only supported his claim of self-defense and not sudden passion or fit of rage. He argues that he wished to present an "all or nothing" defense, even though his counsel never made such an argument to the trial court.

{¶28} Defense counsel did not object to the voluntary-manslaughter instruction. During closing argument, in addition to his argument of complete innocence due to self-defense, counsel argued that if Rhymer was guilty of anything, it was voluntary manslaughter. Therefore, we must review for plain error. *State v. Clayton*, 62 Ohio St.2d 45, 46, 402 N.E.2d 1189 (1980).

**{¶29}** In *State v. Wine,* the Ohio Supreme Court addressed the issue of whether a defendant who presents an "all or nothing" defense has the right to prevent the trial court from instructing the jury on a lesser-included offense. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 1. The court held that it is the quality of the evidence, not the strategy of the defense, that determines whether a lesser-included-offense instruction should be given to the jury. *Id.* at ¶ 26. "Regardless of who reaps the benefit of the rule, a charge on a lesser included offense is required when the facts warrant it and improper when the facts do not warrant it." *Id.* at ¶ 20.

**{¶30}** We turn first to the objective portion of the consideration of whether a voluntary-manslaughter instruction was warranted and examine whether there was sufficient evidence presented of provocation by the victim.

**{¶31}** "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane*, 63 Ohio St.3d at 635, 590 N.E.2d 272. The *Shane* court held, "Assault and battery" and "mutual combat" are two of the "classic voluntary manslaughter situations." *Id.*

> Words alone will not constitute reasonably sufficient provocation to incite the use of deadly force *in most situations*. Rather, in each case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant a voluntary manslaughter instruction. The trial judge is required to decide this issue as a matter of law, *in view of the specific facts of the individual case.*

(Emphasis added.) *Id.* at 637.

{¶32} The evidence showed that Landacre was dating the mother of Rhymer's child and was a father figure to that child. Per Rhymer's testimony, Landacre had previously threatened him with violence, had texted him a picture of his penis, had broken Kancy's car windows, and had tried to kill J. Landacre showed up to the custody exchange uninvited, extremely agitated, and under the influence of drugs. Rhymer testified that Landacre challenged him to a fight in front of J, yelling, "There you are you, you are hiding from me, I found you, little pussy bitch, come on pussy bitch, let's do this right now, let's do this motherfucker." Furthermore, Rhymer testified that Landacre pushed him and tried to grab the firearm from him. Under the specific facts of this case, we find there was sufficient evidence of provocation.

{¶33} Turning next to the subjective portion of the inquiry, we must determine whether there was sufficient evidence that Rhymer actually was under the influence of sudden passion or in a fit of rage. We must examine Rhymer's emotional and mental state and the conditions and circumstances that surrounded him at the time.

{¶34} Rhymer did testify repeatedly in support of his self-defense claim that he was scared for his life and J's life. And it is well-established that fear alone is insufficient to show that a defendant acted under a sudden passion or fit of rage so as to warrant the voluntary-manslaughter instruction. *Levett*, 1st Dist. Hamilton No. C-040537, 2006-Ohio-2222, at ¶ 29, quoting *State v. Perdue*, 153 Ohio App.3d 213, 2003-Ohio-3481, 792 N.E.2d 747, ¶ 12 (7th Dist.), and *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998) ("While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of 'anger, hatred,

12

jealousy, and/or furious resentment.' The Ohio Supreme Court has specifically held that 'fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.' ").

{¶35} However, when asked if Landacre's statements made him angry, Rhymer testified, "It made me upset that he was there," because he showed up uninvited and was taunting him in front of his son. He further testified that he could have gotten into his car and driven away, but instead he chose to reach into the vehicle and grab his gun. The evidence was also uncontroverted that Landacre was unarmed. This evidence was sufficient to show that Rhymer was acting under the influence of sudden passion or in a fit of rage. *Compare State v. Richcreek*, 3d Dist. Paulding No. 11-20-03, 2021-Ohio-636, ¶ 35 (finding sufficient evidence that the defendant acted in a sudden passion or fit of rage based on the defendant's turbulent history with the victim and testimony demonstrating that the defendant was "evidently upset" about the victim's relationship with the mother of the defendant's children); *State v. Palmer*, 10th Dist. Franklin No. 87AP-1124, 1988 WL 142109, *4 (Dec. 27, 1988) (finding sufficient evidence to warrant a voluntary-manslaughter instruction where the defendant testified that he was not angry, but he was "upset" by the victim's actions); *State v. Thomas*, 10th Dist. Franklin No. 95APA08-984, 1996 WL 145457, *3 (Mar. 26, 1996) (finding sufficient evidence of "defendant's subjective passion or fit of rage" where the defendant testified that he was "upset" after the victim punched him and took his money and further testified, "I was just mad that my money got tooken [sic] and I got hit in my nose * * * I wasn't mad * * * you can say I was mad, but I wasn't that mad," and an eyewitness testified that the defendant was "visibly upset"); *contrast Perdue*, 153 Ohio App.3d 213, 2003-Ohio-

3481, 792 N.E.2d 747, at ¶ 1 ("[a]lthough there is evidence of provocation by the victim, there is *no* evidence in the record that could support a finding that Perdue was acting under a sudden passion or fit of rage when he shot and killed Raymond Ortiz."). (Emphasis added.)

{¶36} The prosecution also demonstrated to the jury that Rhymer's interview with the police was inconsistent with his trial testimony, which lessened his credibility regarding his self-defense claim.

{¶37} The trial court did not err by instructing the jury on voluntary manslaughter because there was sufficient evidence that Rhymer acted in a state of sudden passion or fit of rage. No manifest miscarriage of justice occurred. The second assignment of error is overruled.

### *Third Assignment of Error*

{¶38} In his third assignment of error, Rhymer argues that he was denied the effective assistance of counsel. To establish an ineffective-assistance-of-counsel claim, an appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense, thereby depriving appellant of a fair trial. *State v. Smith*, 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶ 63, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶39} First, an appellant must show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687. Debatable trial tactics do not demonstrate deficient performance and "do not constitute a deprivation of the effective assistance of counsel." *Smith* at ¶ 63, citing *Clayton*, 62 Ohio St.2d at 49, 402 N.E.2d 1189.

14

{¶40} Rhymer contends that trial counsel was ineffective in three ways. First, he argues that counsel should have objected to the jury instruction regarding the use of reasonable force in self-defense. As explained in the first assignment of error, the jury instruction was a correct statement of law. Counsel was not deficient for failing to object.

{¶41} Second, Rhymer argues that counsel should have requested a Castle-Doctrine instruction. The Castle Doctrine provides:

> [A] person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

R.C. 2901.05(B)(2).

{¶42} Rhymer claims that Landacre was in the process of entering his car and he had the right to defend himself without retreating. His argument is contradicted by the evidence. The video and testimony clearly demonstrate that Rhymer was outside of his car when Landacre pulled up. Rhymer reached into his car to get his firearm, but at no point did Landacre attempt to enter Rhymer's car, and the altercation and shooting took place entirely outside of the car. Counsel was not deficient for failing to request a Castle-Doctrine instruction.

{¶43} Third, Rhymer argues that counsel was deficient for not objecting to the voluntary-manslaughter instruction and arguing during closing argument that if

Rhymer was guilty of anything, it was voluntary manslaughter. Rhymer claims that he wanted to present a complete-acquittal defense, as evidenced by his decision to turn down a plea offer for voluntary manslaughter.

{¶44} There is a significant difference between the decision to reject a plea deal and the decision to include voluntary manslaughter as an option for the jury to consider in lieu of murder. Moreover, the jury rejected Rhymer's self-defense claim and found him guilty of voluntary manslaughter, which contains the same elements as murder, except for the mitigating circumstance that he acted under a sudden passion or fit of rage. Without defense counsel's embrace of the voluntary-manslaughter strategy, Rhymer would have been found guilty of murder. The decision to pursue a voluntary-manslaughter conviction as an alternative to a murder conviction was clearly trial strategy. *See Clayton*, 62 Ohio St.2d at 49, 402 N.E.2d 1189; *State v. McCray*, 2017-Ohio-2996, 91 N.E.3d 288, ¶ 65 (1st Dist.).

{¶45} Finally, according to *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, at ¶ 1:

> [A] criminal defendant does not have the right to prevent a trial court from giving lesser-included-offense jury instructions; whether to include such jury instructions lies within the discretion of the trial court and depends on whether the evidence presented could reasonably support a jury finding of guilt on a particular charge.

{¶46} We have already determined that it was not error for the trial judge to have given a voluntary-manslaughter instruction. The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶47}  In his fourth assignment of error, Rhymer contends that the verdict was against the manifest weight of the evidence. Specifically, he argues that the state did not prove beyond a reasonable doubt that he was not acting in self-defense.

{¶48}  In reviewing his claim, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Martin* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.* "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented."  *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{¶49}  Generally an individual is not reasonable in using deadly force against an unarmed assailant, especially where there is only one assailant, the confrontation is not violent, and there are no great size or health discrepancies between the defendant and assailant. 2 Wayne R. LaFave, *Substantive Criminal Law*, Section 10.4(b) (3d Ed.1996).

{¶50}  In *State v. Carmen*, 1st Dist. Hamilton No. C-120692, 2013-Ohio-3325, ¶ 7, the evidence showed that the victim was unarmed and that he "never actually raised his hand" to the defendant.  This court upheld the trial court's findings that the defendant used excessive force in shooting the victim "who had been unarmed and incapable of inflicting death or great bodily harm upon [the

defendant]," and that the defendant had failed to prove that he acted upon a bona fide belief that he was in imminent danger of death or great bodily harm. *Id.* at ¶ 15.

{¶51} Rhymer clearly had an opportunity to retreat; he admitted as much in his testimony and during his interview with detectives. Landacre was unarmed. Kancy testified, and Rhymer told detectives, that Landacre never touched him. The jury did not clearly lose its way in finding that the state proved beyond a reasonable doubt that Rhymer did not act in self-defense.

{¶52} Because Rhymer has failed to show that the jury clearly lost its way in rejecting his self-defense claim, the fourth assignment of error is overruled.

### *Conclusion*

{¶53} All four assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.