# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO.    C-250214
                                           TRIAL NO.     B-2204729
    Plaintiff-Appellee,      :

  vs.                            :
                                                *JUDGMENT ENTRY*
EBONY STENSON,                    :

    Defendant-Appellant.     :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to Appellant and 50% to Appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**
**Enter upon the journal of the court on 6/17/2026 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Stenson*, 2026-Ohio-2280.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :        APPEAL NO.    C-250214
                                                 TRIAL NO.     B-2204729
    Plaintiff-Appellee,            :

  vs.                                 :
                                                 *O P I N I O N*
EBONY STENSON,                          :

    Defendant-Appellant.           :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: June 17, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**NESTOR, Judge.**

{¶1}   This case involves two fellow bus drivers engaged in a tumultuous workplace romance.  Such affairs rarely end well.

{¶2}   Defendant-appellant Ebony Stenson assaulted Henri Jennings with a knife and baton and chased him with a car.  Jennings tried to evade Stenson by forcing entry into a stranger's home.  He was subsequently shot and killed by the unassuming homeowner.  Privileged to defend his home, the homeowner was not charged with Jennings's death, but Stenson was.  Stenson avoided the felony murder conviction at trial, but was convicted of felonious and aggravated assault for the violence that led to Jennings's death.

{¶3}   Because the trial court erred by not providing a consistent jury instruction on an inferior offense, and because two offenses should have merged, the cause must be remanded for resentencing in accordance with this opinion.  In all other respects, the trial court's judgment is affirmed.

## I.  Factual and Procedural History

### A.  Stenson's Charges

{¶4}   On October 5, 2022, a grand jury indicted Stenson on four felony counts.  Count 1 charged felony murder in violation of R.C. 2903.02(B).  Counts 2 and 3 charged felonious assault in violation of R.C. 2903.11(A)(2).

{¶5}   As to Counts 2 and 3, the indictment specifies the weapon for each count.  Count 2 asserts that Stenson "knowingly caused, or attempted to cause, physical harm" with a motor vehicle.  Count 3 charges the same, with a knife.

{¶6}   Count 4 also charged Stenson with felonious assault, under a different subsection of the statute, R.C. 2903.11(A)(1).  Unlike Counts 2 and 3, Count 4 alleged that Stenson "knowingly caused serious physical harm" without specifying how.

**{¶7}** Before trial, Stenson requested a bill of particulars, which the State provided. The bill of particulars asserts, in part, that "Stenson cut the victim, Henri Jennings with a knife. She then tried to strike Henri Jennings with a vehicle." The bill is silent regarding the baton.

**{¶8}** The matter proceeded to a jury trial. As relevant to this appeal, the evidence elicited at trial is as follows.

### B. Trial

**{¶9}** Stenson took the stand in her own defense. She testified that she and Jennings worked together as bus drivers at Cincinnati Metro. Around November 2019, the two began an extramarital affair. Stenson testified that, at times, both parties were violent and abusive towards each other. Ultimately, the affair was on-again-off-again until Jennings's death in September 2022.

**{¶10}** On September 19, 2022, Stenson and Jennings worked overlapping shifts. After their shifts ended, the two went for a drive in Jennings's car. An argument ensued. Stenson testified that as the fight escalated, Jennings, who was driving, pulled off the road and parked.

**{¶11}** The fight continued to escalate. At some point, a knife was drawn. While the record is not conclusive as to who pulled the knife first, Stenson admitted on cross examination that "at one point [the knife] got in [her] hand." The State's evidence included pictures of Jennings's body, which depicted cuts on his neck and ear.

**{¶12}** Stenson testified that Jennings got out of the car and began to flee. Stenson climbed from the passenger seat into the driver's seat and gave chase through neighborhood yards.

**{¶13}** Alexandria Williams, a resident of the street where these events

4

occurred, testified that she observed a man fleeing from a car. On direct examination, Stenson testified that she tried to drive away from the scene and had to "turn the car" so it wouldn't hit Jennings. But on cross examination, Stenson admitted that during an interview[1] with detectives, she had said that she chased Jennings with the car, attempting to hit him. At some point, Stenson exited the car.

{¶14} Meanwhile, Daniel Brewster and his fiancée Aqualeshia Cubit were watching television in their home. Cubit testified that after hearing a loud noise outside, she looked out her front door to see what was going on. She saw a man running towards her neighbor's house, away from a car that was chasing him. The man then turned and ran towards Cubit's house.

{¶15} Cubit, fearful, testified that she shut her front door and retrieved her shotgun. She unloaded the gun, stating that her "intention wasn't to harm anyone, but just scare them away."

{¶16} Cubit returned to her front porch to find Stenson and Jennings there. Cubit testified that Jennings appeared to be attempting to evade Stenson. Cubit pointed the gun at the pair and ordered them, in no uncertain terms, to leave. Stenson left. Jennings, on the other hand, grabbed the barrel of Cubit's gun and forced his way into her house.

{¶17} After seeing Cubit retrieve her shotgun, Brewster, in turn, went to retrieve his own gun. Upon returning, Brewster saw Cubit and Jennings inside the house, wrestling over Cubit's gun. Brewster testified that he screamed at Jennings to "get out of the house," before shooting Jennings twice.

{¶18} Jennings crawled out of the house as Brewster called 9-1-1. Cubit

---

[1] The jury viewed a video of this interview at trial.

testified that after Jennings was shot, Stenson returned to the front porch. Williams testified that after hearing gunshots, she saw a woman hitting a man with what appeared to be a bar or a hammer on the front porch. During an interview with police, Stenson admitted that she hit Jennings with a baton.

**{¶19}** When the police arrived, they found Jennings dead on the porch steps.

**{¶20}** Dr. Ann Laib conducted Jennings's postmortem examination. She testified that the primary cause of Jennings's death was two gunshot wounds to Jennings's torso. Dr. Laib also determined that the "sharp force injuries" on Jennings's neck and ear were contributory causes of his death. The State introduced photographs of Jennings's body into evidence that corroborated this testimony.

**{¶21}** Dr. Laib also described what she referred to "colloquially as a goose egg," which was a bump on Jennings's head caused by blunt impact. She testified that the injury was "significant enough . . . that it caused bleeding under the scalp, which caused it to raise[.]" But ultimately, she opined that the contusion was a "minor head injury" that caused "no serious damage to the skull or brain."

**{¶22}** At the close of evidence, Stenson requested jury instructions for the inferior offense of aggravated assault on Counts 2, 3, and 4. The instruction informed the jury that if Stenson acted "under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation" the jury should find her guilty of the inferior offense of aggravated assault instead of felonious assault. The court granted the motion as to Count 3 (which specified the knife) but declined to include the instruction on Counts 2 (which specified the car) and 4 (unspecified catch-all count).

### C. Post-Trial

**{¶23}** The jury returned a not guilty verdict on Count 1, felony murder. The

6

jury found Stenson guilty as charged on Counts 2 and 4, felonious assault. On Count 3, the knife charge, the jury found Stenson guilty of the inferior offense of aggravated assault.

**{¶24}** At sentencing, Stenson moved for a new trial or an acquittal, arguing that the trial court erred by failing to include inferior offense jury instructions on Counts 2 (car) and 4 (unspecified). The trial court denied the motion. In explaining its ruling, the court stated that, in its view, Stenson could have acted under provocation with respect to Count 3, which involved her use of a knife. In contrast, the court concluded that Stenson had time to cool down after the knife injury and before the conduct charged in Counts 2 and 4. The court therefore declined to give the inferior offense instruction on those counts.

**{¶25}** The court sentenced Stenson to consecutive terms of eight to 12 years on Count 2, 18 months on Count 3, and four years on Count 4. In total, Stenson received an aggregate sentence of 13 ½ to 17 ½ years.

**{¶26}** This appeal followed.

## II. Analysis

**{¶27}** Stenson presents five assignments of error for our review. First, she argues that the trial court erred by denying her request for a jury instruction on the inferior offense of aggravated assault on Counts 2 and 4. Next, Stenson asserts that the trial court erred by failing to merge allied offenses of similar import. Third, she argues that the record does not support the trial court's consecutive sentences findings. Finally, Stenson's fourth and fifth assignments challenge the sufficiency and manifest weight of the evidence.

### A. Jury Instructions

**{¶28}** We review a trial court's decision denying a defendant's proposed jury

instruction for an abuse of discretion. *State v. Davenport*, 2024-Ohio-1289, ¶ 13 (1st Dist.), citing *State v. Thompkins*, 2023-Ohio-2603, ¶ 15 (1st Dist.). An abuse of discretion occurs when the trial court acts in an "arbitrary, unreasonable, or unconscionable" manner. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 33. Trial courts lack discretion to commit errors of law. *Id.* at ¶ 39.

**{¶29}** A trial court should include a defendant's requested jury instruction if the instruction is a correct statement of law and applicable to the facts of the case. *Davenport* at ¶ 14, citing *State v. Adams*, 2015-Ohio-3954, ¶ 240. If sufficient evidence is presented that would allow a jury to reject the greater offense and find the defendant guilty of an inferior offense, the trial court must provide a jury instruction on the inferior offense. *Thompkins* at ¶ 17, citing *State v. Rhymer*, 2021-Ohio-2908, ¶ 25 (1st Dist.). Trial courts "'must view the evidence in the light most favorable to the defendant'" when determining whether to provide a jury instruction on an inferior offense. *Id.,* quoting *Rhymer* at ¶ 25.

**{¶30}** Here, Counts 2, 3, and 4 of the indictment charged Stenson with felonious assault, in violation of R.C. 2903.11(A). Stenson requested jury instructions for the inferior offense of aggravated assault on each of those counts. *See State v. Smith*, 2006-Ohio-3720, ¶ 44 (1st Dist.) (Because the elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of serious provocation, aggravated assault is an inferior offense of felonious assault.).

**{¶31}** Stenson requested that the court inform the jury that if it found that she was acting "under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation," then the jury should find her guilty of the inferior offense of aggravated assault.

{¶32} The trial court granted Stenson's request as to Count 3. Count 3 charged that Stenson "knowingly caused, or attempted to cause, physical harm" to Jennings with a knife. The trial court denied her request as to Counts 2 and 4.

*1. The trial court did not abuse its discretion as to Count 2.*

{¶33} Count 2 of the indictment alleged that Stenson "knowingly caused, or attempted to cause, physical harm to [Jennings] by means of a . . . motor vehicle," in violation of R.C. 2903.11(A)(2).

{¶34} The trial court did not abuse its discretion when it found that the inferior offense instruction did not apply to this count. In her testimony, Stenson denied chasing Jennings with the car. She stated that she had to "turn [the car] so that it wouldn't hit him."

{¶35} Stenson cannot have it both ways. Her own testimony is incompatible with the jury instruction she requests. She cannot testify that she did not chase Jennings with the car and then request that the court instruct the jury that she chased him with the car because she was "acting under the influence of sudden passion or in a sudden fit of rage."

{¶36} The trial court properly determined that the evidence was not sufficient to warrant a provocation instruction on Count 2. The first assignment of error, as it relates to Count 2 of the indictment, is overruled.

*2. The trial court abused its discretion as to Count 4.*

{¶37} We reach a different conclusion as to Count 4. Count 4 charged Stenson with felonious assault under a different subsection of the statute. The indictment alleges that Stenson "knowingly caused serious physical harm" to Jennings, in violation of R.C. 2903.11(A)(1). Critically, unlike in Counts 2 and 3, the indictment does not specify the means by which Stenson was alleged to have violated the statute.

**{¶38}** In its brief, the State suggests that Count 4 charged Stenson for hitting Jennings over the head with the baton. Thus, the State's argument on appeal is that there were three separate violent acts (knife, car, baton) for which Stenson was charged.

**{¶39}** The State's assertion that Count 4 charges Stenson for her conduct with the baton is problematic for two reasons. First, the evidence does not definitively show that the harm resulting from this conduct meets the definition of "serious physical harm" under the statute.[2] Dr. Laib testified that Jennings's contusion was a "minor head injury" which caused "no serious damage to the skull or brain." Unlike the cuts on Jennings's neck, Dr. Laib did not list the contusion as a contributing cause of death. Given the coroner's testimony indicating that the injury was not severe, and did not contribute to Jennings's death, it does not meet the definition of serious physical harm under R.C. 2901.01.

**{¶40}** Second, the State's argument on appeal is inconsistent with its argument at trial. During closing arguments, the State argued that the "serious physical harm" charged in Count 4 was the cuts on Jennings's neck, caused by the knife. Further, neither the indictment nor the bill of particulars mentions the baton.

> A defendant is entitled to a bill of particulars setting out the ultimate
> facts upon which the state expects to rely in establishing its case, and
> the state, upon supplying such bill, should be restricted in its proof to

---

[2] R.C. 2901.01(5) defines serious physical harm as "(a) Any mental illness or condition of such gravity that as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

the indictment and the particulars as set forth in the bill. *State v. Bushong*, 2003-Ohio-2296, ¶ 30 (5th Dist.), citing *State v. Collett*, 1944 Ohio App. LEXIS 490 (2d Dist. Dec. 2, 1944). Because neither the indictment nor the bill of particulars mentions the baton, it is impermissible for the State to later argue that that conduct forms the basis of a conviction.

**{¶41}** So, the conduct underlying Count 4 of the indictment was the act of assaulting Jennings with the knife. This is the same conduct for which Stenson was charged under Count 3. The trial court granted the jury instruction for the inferior offense on Count 3. Having found that there was sufficient evidence of provocation for the jury to consider aggravated assault on Count 3, the trial court should have likewise instructed the jury on the inferior offense of aggravated assault for Count 4. *See State v. Wimpey*, 2019-Ohio-4823, ¶ 17 (6th Dist.) (finding plain error where the trial court provided a jury instruction on one count but failed to provide the same jury instruction on another count relating to the defendant's same conduct).

**{¶42}** Because Counts 3 and 4 were presented to the jury as relating to the same conduct, it was an abuse of discretion for the trial court to provide the instruction for one count, and not the other.

**{¶43}** Generally, an appellate court remedies a trial court's failure to provide a jury instruction by remanding the case for a new trial on that count. *State v. Love*, 2017-Ohio-8960, ¶ 2 (1st Dist.). However, a new trial is unnecessary in this case. The jury found Stenson guilty of aggravated assault, the inferior offense, on Count 3. Thus, it follows that had the trial court properly instructed the jury as to aggravated assault on Count 4, the jury would have found her guilty of the same offense, as it was for the same conduct.

**{¶44}** The first assignment of error is overruled in part and sustained in part.

It is overruled as it relates to Count 2 of the indictment and sustained as it relates to Count 4 of the indictment.

{¶45} Accordingly, we reverse the trial court's judgment convicting Stenson of felonious assault on Count 4 and remand the cause with instructions for the trial court to enter a judgment of conviction on the inferior offense of aggravated assault, in violation of R.C. 2903.12(A)(2), on Count 4 of the indictment.

### B. Merger

{¶46} In her second assignment of error, Stenson contends that the trial court erred by failing to merge Counts 2, 3, and 4 for sentencing under R.C. 2941.25. We review a trial court's merger determination de novo. *State v. Bailey*, 2015-Ohio-2997, ¶ 73 (1st Dist.).

{¶47} In determining whether offenses merge, courts consider three factors—the conduct, the animus, and the import. *State v. Ruff*, 2015-Ohio-995, ¶ 31. Offenses will not merge, and a defendant may be convicted of multiple offenses, if any of the following is true: (1) the offenses are "dissimilar in import or significance[,]" (2) the offenses were "committed separately[,]" or (3) the offenses were "committed with separate animus or motivation[.]" *Id.*

{¶48} Based on our disposition of the first assignment of error, Counts 3 and 4 merge on remand. The record demonstrates that Stenson's conduct with the knife involved the same import, occurred as part of a single course of conduct, and was not driven by a separate animus.

{¶49} However, Count 2, which charged felonious assault with the car, does not merge with Counts 3 and 4. Chasing Jennings with the car and inflicting injuries with the knife constituted separate acts which resulted in separate, identifiable harms. *See id.* at ¶ 26 ("[A] defendant's conduct that constitutes two or more offenses against

a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense."). Thus, the trial court was correct in its determination that Count 2 was not subject to merger.

**{¶50}** The second assignment of error is sustained as it relates to Counts 3 and 4, and overruled in all other respects.

**{¶51}** Stenson's conviction on Count 2 of the indictment, for felonious assault in violation of R.C. 2903.11(A)(2), is affirmed. We reverse the sentences imposed on Counts 3 and 4 and remand the cause for the trial court to hold a new sentencing hearing on the count on which the State elects to proceed.

### C. *Consecutive Sentences*

**{¶52}** Stenson's third assignment of error challenges the trial court's imposition of consecutive sentences. Because our resolution of the first two assignments of error mandates remanding the case for resentencing, this assignment of error is moot. *See* App.R. 12(A)(1)(c).

### D. *Sufficiency and Weight*

**{¶53}** Under the fourth and fifth assignments of error, Stenson argues that her convictions on Counts 2 and 4 were not supported by sufficient evidence and are against the manifest weight of the evidence. In her brief, Stenson addresses these assignments of error together. We do the same.

**{¶54}** When reviewing a challenge to the sufficiency of the evidence, "the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt." *State v. Black*, 2017-Ohio-5611, ¶ 20 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Sufficiency tests the State's burden of production. *State v. Hicks*, 2023-Ohio-2209, ¶

8 (1st Dist.), citing *State v. Messenger*, 2021-Ohio-2044, ¶ 44 (10th Dist.).

**{¶55}** A challenge to the manifest weight of the evidence requires the appellate court to "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Black* at ¶ 20, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Manifest weight tests the State's burden of persuasion. *Hicks* at ¶ 15, citing *Messenger* at ¶ 44. An appellate court should reverse a conviction as against the manifest weight of the evidence only in exceptional cases, because the trier of facts is in the best position to view the evidence and determine the credibility of the witnesses. *Id.*

**{¶56}** On Count 2, Stenson was convicted of violating R.C. 2903.11(A)(2), which provides in relevant part that "no person shall . . . cause or attempt to cause physical harm to another . . . by means of a deadly weapon[.]" Specifically, Stenson was found guilty of violating this section for chasing Jennings with the car.

**{¶57}** Following our review of the record, we hold that there was sufficient evidence to support Stenson's conviction on Count 2. Cubit and Williams both testified that they saw Jennings fleeing from a car that was chasing him. The jury viewed a recording of Stenson's interview with detectives where she admitted to trying to hit Jennings with the car. This evidence is sufficient to sustain Stenson's conviction as to Count 2.

**{¶58}** The conviction on Count 2 was also not against the manifest weight of the evidence. Although Stenson testified that she did not attempt to hit Jennings with the car, that testimony directly contradicted the testimony of Williams and Cubit, as well as Stenson's previous statements made in the recorded interview. The jury, as the trier of fact, found the State's version of the events underlying Count 2 more

compelling than Stenson's version. This is not the exceptional case in which the trial court clearly lost its way and created a manifest miscarriage of justice.

{¶59} Stenson's sufficiency and weight arguments as to Count 4 are moot based on our resolution of the first and second assignment of errors. *See State v. Johnson*, 2023-Ohio-1367, ¶ 116-117, 130 (8th Dist.) (where a count merges upon resentencing, appellate courts need not consider challenges to the sufficiency or weight of the evidence on that count).

{¶60} The fourth and fifth assignments of error are overruled as they relate to Count 2 and moot as they relate to Count 4.

### III. Conclusion

{¶61} In sum, Stenson's conviction for felonious assault in violation of R.C. 2903.11(A)(2) on Count 2 is affirmed. We reverse Stenson's conviction for felonious assault on Count 4 and remand the cause for the trial court to enter a judgment of conviction on the inferior offense of aggravated assault, in violation of R.C. 2903.12(A)(2), on Count 4.

{¶62} Counts 3 and 4 are allied offenses, and therefore, the trial court's sentences on these counts are reversed and the cause is remanded for the trial court to hold a new sentencing hearing after the State elects which offense to pursue for sentencing.

Judgment accordingly.

KINSLEY, P.J., and MOORE, J., concur.