[Cite as *State v. Day*, 2026-Ohio-1859.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114582 |
| v. | : | |
| DUJUAN DAY, SR., | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** May 18, 2026

---

Cuyahoga County Court of Common Pleas
Case No. CR-24-690610-A
Application for Reopening
Motion No. 593532

---

### *Appearances:*

Dujuan Day, *pro se*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Dujuan Day, Sr. ("Day"), pro se, has filed an application to reopen his appeal pursuant to App.R. 26(B) and *State v. Murnahan*, 63 Ohio St.3d 60 (1991), arguing ineffective assistance of appellate counsel. Day seeks to reopen his appeal in *State v. Day,* 2025-Ohio-5625 (8th Dist.), in which this court affirmed the trial court's judgment finding Day's convictions were not against

the manifest weight of the evidence and overruling challenges to the trial court's jury instructions and effectiveness of his trial counsel.

{¶ 2} For the reasons that follow, we deny Day's application to reopen his appeal.

**Procedural and Factual History**

{¶ 3} On March 18, 2024, Day was indicted for the crimes of aggravated murder in violation of R.C. 2903.01(A) (Count 1); murder in violation of R.C. 2903.02(A) (Count 2); murder in violation of R.C. 2903.02(B) (Count 3); felonious assault in violation of R.C. 2903.11(A)(1) (Count 4); felonious assault in violation of R.C. 2903.11(A)(2) (Count 5); having weapons while under disability in violation of R.C. 2923.13(A)(2), with a forfeiture specification (Count 6); and having weapons while under disability in violation of R.C. 2923.13(A)(3), with a forfeiture specification (Count 7). Count 1 through 5 included one- and three-year firearm specifications.

{¶ 4} The indictment stemmed from allegations that Day shot and killed Benjamin Rotger ("Rotger") when he arrived at Day's home late in the evening during a snow storm. Rotger and Day were friends. Day alleged that he unknowingly shot Rotger, thinking Rotger was an intruder trying to break into his home. The shooting was captured by surveillance cameras that Day had installed on his house earlier the day of the homicide.

{¶ 5} The case proceeded to jury trial on October 7, 2024. Day elected to try the weapons charges to the bench. At the conclusion of trial, the jury found Day

not guilty on the aggravated-murder charge but guilty on two counts of murder and two counts of felonious assault, as well as the associated firearm specifications. The trial court found Day guilty of the two counts of having weapons while under a disability. Day was subsequently sentenced to life imprisonment with the possibility of parole after 21 years.

{¶ 6}   On October 25, 2024, Day filed a timely notice of appeal presenting eight assignments of errors for review:

1. The evidence is insufficient, as a matter of law, to support [Day's] convictions for having a weapon while under disability.

2. [Day's] convictions are against the manifest weight of the evidence.

3. The trial court committed prejudicial error and denied [Day] due process of law by refusing to instruct the jury on the defense of another.

4. The trial court committed prejudicial error and denied [Day] due process of law by failing to give proper jury instructions on the defense of self-defense.

5. The trial court committed plain error and denied [Day] due process of law by failing to give a limiting instruction on the use of evidence of prior convictions.

6. The trial court committed prejudicial error by refusing to instruct the jury on the lesser included offense of reckless homicide.

7. The trial court committed prejudicial error and denied [Day] due process of law by refusing to admit [the defense's] Exhibit P, the audio/video recording of the police interrogation Day made a few hours after the shooting.

8. Day received ineffective assistance of counsel resulting in a denial of due process of law and the right to counsel.

**{¶ 7}** On December 18, 2025, this court overruled Day's assignments of error and affirmed the judgment of conviction and sentence. *Day*, 2025-Ohio-5625, at ¶ 1 (8th Dist.).

**{¶ 8}** On March 18, 2026, Day filed a timely application to reopen his appeal pursuant to App.R. 26(B). Day claims he was denied the effective assistance of appellate counsel because appellate counsel failed to raise the following proposed assignments of error on appeal:

### Proposed Assignment of Error No. 1

Appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to defective jury instructions; appellate counsel was ineffective also for failing to raise the issue under plain error review.

### Proposed Assignment of Error No. 2

Appellate counsel was ineffective for failing to present for review properly objections.

### Proposed Assignment of Error No. 3

Appellate counsel was ineffective for failing to challenge the effectiveness of trial counsel for failing to object to Confrontation Clause violations; appellate counsel was ineffective for failing to present for review [Confrontation Clause] violations, which were not objected to, under plain error review.

### Proposed Assignment of Error No. 4

Appellate counsel was ineffective for [failing to] challenge the effectiveness of trial counsel for failing to object and file a motion to suppress where police officials reinitiated custodial interrogation after [Day] unambiguously invoked his constitutional rights to counsel and silence.

## Law and Analysis

## Standard of Review

{¶ 9} A defendant in a criminal case may apply to reopen their appeal from a judgment of conviction based on a claim of ineffective assistance of appellate counsel. App.R. 26(B)(1). Furthermore, the application must be filed in the court of appeals where the appeal was decided "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." *Id.* and App.R. 26(B)(2)(b).

{¶ 10} We evaluate the effectiveness of appellate counsel using the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Leyh*, 2022-Ohio-292, ¶ 17. Accordingly, the applicant must establish that (1) his "counsel's performance was objectively unreasonable," and (2) "there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (Cleaned up.) *Id.* at ¶ 18, citing *id.* at 687, 694. Under this review, this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Hardy*, 2020-Ohio-4743, ¶ 3 (8th Dist.).

{¶ 11} Under App.R. 26(B), there is a two-stage procedure for evaluating ineffective-assistance-of-appellate-counsel claims. *Leyh* at ¶ 19. In the first stage, the applicant must "put forth a colorable claim of ineffective assistance of counsel." *Id.* quoting *State v. Murnahan*, 63 Ohio St.3d 60, 66 (1992). The application "shall be granted if there is a genuine issue as to whether the applicant was deprived of the

effective assistance of counsel on appeal." App.R. 26(B)(5). Furthermore, "[t]he burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Leyh* at ¶ 21, citing *State v. Spivey*, 84 Ohio St.3d 24, 25 (1998).

{¶ 12} If the applicant makes the threshold showing that there are legitimate grounds to support the claim of ineffective assistance of appellate counsel, the application must be granted and the appeal reopened. *State v. Smith*, 2026-Ohio-183, ¶ 14 (8th Dist.), citing *Leyh* at ¶ 25, citing App.R. 26(B)(5). At that point, the case moves to the second stage, where the case "shall proceed as on an initial appeal . . . except that the court may limit its review to those assignments of error and arguments previously not considered." App.R. 26(B)(7). Additionally, the parties must address "the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency." *Id.*; *see Leyh* at ¶ 22, quoting 1993 Staff Notes to App.R. 26(B) (finding that the applicant must submit a brief and supporting materials "'to establish that prejudicial errors were made in the trial court and that ineffective assistance of appellate counsel . . . prevented these errors from being presented effectively to the court of appeals'").

{¶ 13} Given the foregoing, we now address each of Day's proposed assignments of error.

**First Proposed Assignment of Error**

{¶ 14} In his first proposed assignment of error, Day argues that appellate counsel was ineffective since he did not (1) argue that trial counsel was ineffective

when he failed to object to jury instructions and (2) raise a challenge to the jury instructions under plain-error review.  Day claims that it was error for the trial court to instruct the jury that the State must prove any of the following beyond a reasonable doubt to defeat his self-defense claim:  (a) the defendant was at fault in creating the situation giving rise to the affray, (b) the defendant did not have reasonable grounds to believe he was in imminent danger of death or great bodily harm, (c) the defendant did not have an honest belief of being in imminent danger of death or great bodily harm, or (d) the defendant used unreasonable force.

{¶ 15}  Day argues his burden of production only required him to prove he was not at fault in creating the situation that gave rise to the altercation and that he had a bona fide belief that he was in imminent danger of death or great bodily harm.  He alleges that the addition of unreasonable force "diluted the State's burden of proof and added an impermissible burden on the defense, thereby undermining the presumption of innocence."  Day's argument lacks merit.

{¶ 16}  Day's appellate counsel raised the jury instructions as error in his direct appeal and specifically challenged the jury instruction on unreasonable force.  However, because the jury instructions were agreed to by the parties, this court found that it was invited error and overruled the assignment of error.  *Day*, 2025-Ohio-5625, at ¶ 65.  Additionally, Day's appellate counsel raised as error that his trial counsel was ineffective because she failed to object to the instruction on unreasonable force.  *Id*. at ¶ 79-80.  We overruled the assignment of error, noting:

One of the tenets associated with the use of force in self-defense is that "'the defendant may only use "that force, which is reasonably necessary to repel the attack."'" *State v. Giglio*, 2023-Ohio-2178, ¶ 24 (8th Dist.), quoting *State v. Rhymer*, 2021-Ohio-2908, ¶ 19 (1st Dist.), quoting [*State v.*] *Williford*, 49 Ohio St.3d [247,] 249. *Giglio* involved the use of deadly force where the defendant similarly objected to an instruction on unreasonable force. This court noted that "the trial court's instruction complied with Ohio law regarding the defendant's use of deadly force in self-defense and the requirement that the force used cannot be unreasonable." *Id.* Therefore, the trial court properly instructed the jury on unreasonable force and Day's counsel did not err when she did not challenge the instruction.

*Id.* at ¶ 81.

{¶ 17} Based on the foregoing, we find that Day's first proposed assignment of error does not form a basis for reopening the original appeal.

**Second Proposed Assignment of Error**

{¶ 18} In his second proposed assignment of error, Day argues that his appellate counsel was ineffective for failing to raise as error testimony from Rotger's girlfriend, Ebone Boone ("Boone"). Boone testified that Rotger received a phone call from Day and was excited because he believed Day was going to return some money that Day had borrowed from him. Rotger left right after that conversation. Day claims these statements violated the Sixth Amendment to the United States Constitution's Confrontation Clause and that they contradicted his claim of self-defense. To support his argument, Day points out that the jury asked two question during deliberations about whether the premeditation element of aggravated murder required evidence that Day intended to kill a certain person. The trial court answered the questions in the negative over Day's trial counsel's objection. Day also

pointed to a juror's note within the record wherein they opined that they did not believe the State's evidence regarding premeditation. Day alleges these factor's combined showed that appellate counsel's failure to challenge these issues amounted to ineffective assistance.

{¶ 19} "Premeditation" or "prior calculation and design" is an element of the crime of aggravated murder. R.C. 2903.01(A). Day is essentially arguing that the jury could infer from the testimony of Rotger's girlfriend that Day knew Rotger was coming to his house prior to the homicide and that he acted deliberately to kill Rotger. Further, he argues the jury's questions manifested an intent to acquit him of aggravated murder. However, the jury did acquit Day of the aggravated-murder charge. Even if appellate counsel erred, the jury ultimately found that the State did not prove Day's guilt beyond a reasonable doubt for the crime of aggravated murder. Therefore, Day cannot establish that he was prejudiced by counsel's alleged failures.

{¶ 20} Based on the foregoing, we cannot say Day has presented a colorable claim of ineffective assistance of counsel. His second proposed assignment of error does not provide grounds for reopening his appeal.

**Third Proposed Assignment of Error**

{¶ 21} In the third proposed assignment of error, Day challenges the introduction of testimony that violated the Confrontation Clause or relied on expert or technical analysis without testimony from the source. Specifically, Day alleges that (1) Officer James Huskey was permitted to testify regarding statements from Anita Griggs ("Griggs"), Day's girlfriend, that she saw Day with a firearm; (2)

Detective Patrick Monnolly was permitted to summarize the contents of T-Mobile records that described contacts between Day and Rotger; and (3) Dr. Thomas Gilson was permitted to testify about another pathologist's work on Rotger's autopsy and corrected the findings of the original report regarding the path of one of the bullets. Day argues that his trial counsel failed to object to these alleged errors and his appellate counsel was ineffective for failing to raise the issues under plain-error review.

{¶ 22} With respect to Officer Huskey's testimony, it was undisputed that Day had the firearm and used it to shoot Rotger. Day's case was based on self-defense and defense of others, both of which required that he admit to possession of the firearm. Furthermore, the record reflects that the State did not bring up Officer Huskey's contact with Griggs; rather, the defense did on cross-examination.

> Trial counsel: I guess my question is were you the person that was actually talking to [Griggs] and getting the information that you wrote in your report yourself?
>
> Officer Huskey: Yes.
>
> Trial counsel: Okay. So the information in the report that relates to [Griggs] is something that you obtained personally?
>
> Officer Huskey: Correct.
>
> Trial counsel: And you obtained from [Griggs] information that also indicated that she saw [Day] with a firearm, correct?
>
> Officer Huskey: If that's what she stated, then yes.
>
> Trial counsel: Well, I'm asking you, do you recall writing it in your report?
>
> Officer Huskey: I don't recall, but if it's in there, then yes.

Trial counsel: Well, it says she saw [Day] –

State: Objection.

Court: I'll allow it . . . .

Trial counsel: Does that sound accurate to you, Officer? Would you like to see your report again?

{¶ 23} Although the trial court overruled the State's objection, the defense did not pursue the question about Grigg's statement any further. Additionally, the State did not pursue that line of questioning on redirect examination, nor did the defense address it on recross-examination.

{¶ 24} Trial counsel certainly could not object to a question that they asked. Furthermore, Day was not prejudiced by the testimony where his claim of self-defense required an admission that he had the firearm.

{¶ 25} Next, we address Det. Monnolly's testimony. Det. Monnolly testified regarding Day's T-Mobile records. The records were call logs showing ingoing and outgoing calls from Day's cell phone for the week prior to and a few days after the homicide. In addition to the cell phone records, the State introduced into evidence a 31-page document from T-Mobile titled, "Interpreting Records," which included sections on interpreting call detail records and discussing the time codes used in the reports.

{¶ 26} The cell phone records included a certification signed by T-Mobile's legal and emergency response division. The signatory averred that the records were (1) "made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters"; (2) that the

records were made in the ordinary course of business; (3) "[t]he business activity made such records as a regular practice"; and (4) "if the records are not the original they are a duplicate of the original." Evid.R. 803(6) and 902(11) allow for the introduction of records that bear this type of certification without testimony from the custodian of records or another person with personal knowledge. *State v. Addicott*, 2025-Ohio-1785, ¶ 26 (11th Dist.). Properly authenticated business records are nontestimonial and their introduction does not violate the Sixth Amendment of the United States Constitution's Confrontation Clause. *State v. Hood*, 2012-Ohio-6208, ¶ 39.

{¶ 27} Det. Monnolly's testimony merely linked his investigative findings with the cell phone call logs. Det. Monnolly testified that he obtained Day's cell phone during the investigation and submitted a subpoena to T-Mobile for the cell phone call log. He then testified that he obtained Day's and Rotger's cell phone numbers and compared those numbers to the information in the call log to determine if the two had spoken. Det. Monnolly explained that the time codes in the call logs were in Coordinated Universal Time ("UTC") and had to be converted to Eastern Standard Time ("EST"). He then identified calls between Rotger and Day and explained the days and times of the calls to the jury, converting the time from UTC to EST. Because the records were properly authenticated and admissible, an objection would have been overruled. Furthermore, Day was not prejudiced by the testimony presented by Det. Monnolly because the records were independently admissible.

{¶ 28} Finally, Day challenges the testimony of Dr. Gilson, the director of the medical examiner's office. The pathologist who conducted Rotger's autopsy, Forensic Pathologist Daniel Galita ("Dr. Galita"), retired prior to trial. Dr. Gilson and other pathologists on his staff reviewed all of Dr. Galita's cases prior to his retirement. Dr. Gilson personally reviewed Rotger's case. He discussed some of it with Dr. Galita prior to his retirement, but acknowledged that he did not review the entire case with Dr. Galita. After Dr. Galita retired, Dr. Gilson testified that he independently reviewed the entire case again. Dr. Gilson explained that when he reviewed the case, he had information that Dr. Galita had not received, namely a report on the clothing Rotger was wearing when he was killed.

{¶ 29} Generally, an autopsy report is nontestimonial and does not implicate the Confrontation Clause because it is not "'(1) prepared for the primary purpose of accusing a targeted individual nor (2) prepared for the primary purpose of providing evidence in a criminal trial.'" *State v. Everson*, 2016-Ohio-87, ¶ 46 (7th Dist.), quoting *State v. Maxwell*, 2014-Ohio-1019, ¶ 62. Additionally, the testimony of Dr. Gilson does not implicate the Confrontation Clause because he did an independent evaluation and based his conclusions on his own review of the evidence. *Id.* at ¶ 48, quoting Evid.R. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing.").

{¶ 30} Therefore, Day's third proposed assignment of error does not present a colorable claim for ineffective assistance of appellate counsel and cannot form a basis to reopen his appeal.

**Fourth Proposed Assignment of Error**

{¶ 31} Finally, in his fourth proposed assignment of error, Day claims that his appellate counsel was ineffective since he failed to raise an ineffective-assistance-of-trial claim for trial counsel's "fail[ure] to object and file a motion to suppress where police officials reinitiated custodial interrogation after [Day] unambiguously invoked his constitutional rights to counsel and silence."

{¶ 32} Preliminarily, the State did not introduce the interview into evidence; rather, the defense did. The defense was permitted to publish the first seven to eight minutes of the video interview to the jury. However, the trial court refused to allow the exhibit to be produced to the jury during deliberations. On appeal, his appellate counsel challenged the trial court's refusal to allow the video to be submitted to the jury. Because Day did not object to the exclusion, argue plain error, or establish he was prejudiced by the trial court's decision, this court overruled the assignment of error.

{¶ 33} The entire video was submitted to this court on direct appeal. Based on our review, Day's trial counsel did not err in failing to file a motion to suppress. During the interview, Det. Monnolly read the Miranda warnings to Day, asked if he understood, and then asked if Day was willing to speak to him. Day waived his Miranda warnings and signed a waiver to that effect. After approximately 25

minutes, Day stated that he was "through talking." Nevertheless, Day continued talking. Another detective eventually interposed another question, which Day answered and then again stated he was "through talking." Finally, Day invoked his right to counsel. After that, detectives swabbed Day's hands for gunshot residue. They then engaged him in conversation about submitting a DNA sample.

{¶ 34} Once a suspect has received and understood the Miranda warnings, law enforcement officers may continue questioning "'until and unless the suspect clearly [invokes the right to remain silent].'" *State v. Fowler*, 2016-Ohio-1209, ¶ 19 (5th Dist.), quoting *Davis v. United States*, 512 U.S. 452, 461 (1994). Accordingly, even if trial counsel had filed a motion to suppress and prevailed, the result would have excluded the part of Day's statement, which occurred after he invoked the right to remain silent. The State did not introduce the interview into evidence, and the portion of the interview admitted at trial was covered by a valid waiver of Miranda. Even if trial counsel erred, Day cannot establish that he was prejudiced by the error.

{¶ 35} Accordingly, Day's fourth assignment of error does not present a colorable claim for ineffective assistance of appellate counsel and it fails to establish a basis for reopening his appeal.

{¶ 36} Application denied.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR